UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE JANE FRASER, | Case No. 1:15-cv-1630-GSA |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Defendant. | |

**I.     INTRODUCTION**

Plaintiff Grace Jane Fraser ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] After review of the administrative record, the Court finds the ALJ's decision is not supported by substantial evidence and the Court grants Plaintiff's appeal in part.

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Doc. 7, 8, and 16).

1

## II. BACKGROUND AND PRIOR PROCEEDINGS

Plaintiff filed an application for DIB and SSI on September 25, 2009, alleging a disability onset date of February 9, 2009.[2] AR 121-124; 125-131. Her applications were denied initially on January 29, 2010, and on reconsideration on April 22, 2010. AR 57-59; 62-67. Plaintiff requested a hearing before and Administrative Law Judge ("ALJ"). AR 68. ALJ James Berry conducted a hearing on July 19, 2011. AR 23-41. He published an unfavorable decision on August 2, 2011. AR 8-22. Plaintiff filed an appeal on August 15, 2011. AR 6-7. The Appeals Council denied the request for review on September 20, 2012. AR 1-5. Plaintiff timely filed an appeal in the United States District Court in this district on November 21, 2012. *Fraser v. Comm. of Soc. Sec.*, 1:12-cv-1900 SAB. United States Magistrate Judge Stanely A. Boone reversed ALJ's Berry's decision in part on November 19, 2013, and remanded the matter for further proceedings. AR 538-567.

While Plaintiff's case was pending with the District Court, she filed a new application for benefits, which was denied initially on March 12, 2013, and on reconsideration on January 13, 2014. AR 593-598; 601-607. On remand, the Appeals Council consolidated the remanded claim with the subsenquent claim. AR 584.

Another hearing was conducted before ALJ Sharon L. Madsen on August 7, 2014. AR 420-441. On September 19, 2014, ALJ Madsen issued a decision finding that Plaintiff was not disabled. AR395-411. Plaintiff timely filed an appeal of the decision with the Appeals Council. AR 662-665. The Appeals Council denied Plaintiff's appeal on August 28, 2015, rendering the order the final decision of the Commissioner. AR 389-394.

Plaintiff now challenges the second Appeals Council decision, arguing that the ALJ's assessment of the medical evidence was improper. Specifically, she contends that the ALJ erroneously rejected Dr Rush (an examining physician's) opinion, and improperly relied upon her own lay interpretation of the medical record. (Docs. 12, pgs. 3-16; Doc. 14, pgs. 1-5). Defendant argues that the ALJ's provided specific and legitimate reasons to reject Dr. Rush's opinion by relying on other physicians' opinions and other evidence in the medical record. Therefore, the ALJ's decision is supported by substantial evidence.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

**A.     Medical Record**

The entire medical record was reviewed by the Court.  Only evidence relating to Plaintiff's physical condition is summarized below as this is the basis of Plaintiff's appeal.

Plaintiff suffered a cerebral vascular accident (stroke) on February 9, 2009. AR 214-280. A brain MRI revealed acute left posterior limb of the internalcapsule cerebral infarction; underlying moderate to severe microvascular disease with lacuner infarction seen within the left corona radiata; and no intracranial hemorrhage. AR 258. On February 11, 2009, Plaintiff was evaluated by physical therapy and found to have an unsteady gait and generalized weakness in the upper right extremity. AR 276-277.  Physical therapy was recommended.  AR 276.  Plaintiff participated in physical therapy and was seen by her primary care physician Dr. Gurinder Narain, M.D. several times over the next several  months.  By May 4, 2009, Plaintiff's exam was within normal limits.  AR 311-313; 404-405.

Plaintiff received her primary medical care through Family Health Network, and reported no complaints until October 2009. AR 316; 318; 320; 325; 327. At that time, she complained of being depressed, although she still enjoyed hobbies and taking care of her grandchildren. AR 318; 405.  Physician's Assistant ("PA") Mae Caragay thought the depression may be due to postmenopausal symptoms.  AR  318.  Plaintiff requested that disability paperwork be completed. AR 405; 318.  However, the disability papers were subsequently denied because they were not signed by a physician.  In October 2010, Plaintiff was asked to submit new forms for her doctor's signature. AR 405; 379-380.

On December 20, 2009, Dr. Froehler, M.D. conducted a neurological consultative examination.  AR 331-334. Dr. Froehler reported a right pronator drift with mild right-sided spasticity, and slow finger tapping on the right side. AR 332.  Plaintiff's physical examination was normal, with full motor strength, a normal gait, and no assistive device. AR 404; 331-333. Dr. Froeher found no physical impairments but found exertional limitations to include climbing and balancing. AR 333.

On January 13, 2010, state agency non-examining physician, Dr. Kiger, M.D. reviewed the record and provided a residual functional capacity assessment matching Dr. Froehler's

3

findings. AR 358-360; 404. It was noted that Plaintiff was working three to four hours a day assisting elderly and disabled people at their homes, but experienced more fatigue and had some difficulty using her right hand for finer, more dexterous movements. AR 359. Dr. Kiger opined that Plaintiff was credible as to her impairments, but not completely credible to the extent of her functional limitations. AR 359-360.

Records from Plaintiff's physical examinations from June 2010 through March 2011, showed Plaintiff with a normal gait and normal physical findings. AR 365; 371; 377; 379-380. Except that in November 2010, Plaintiff complained to PA Caragay that she suffered from ongoing fatigue and pain in her shoulder, and difficulty lifting her arm or a comb. AR 371. Plaintiff deferred an x-ray due to financial reasons. AR 372.

In March 2011, Plaintiff continued to complain of fatigue and intermittent right side weakness. AR 365. At that time, her right arm grip strength was 4/5. AR 365. In April 2011, Plaintiff requested that disability forms be filled out by her medical provider and presented with right side facial droop, slight limp, tremors and 3/5 leg strength. AR 903.

On May 3, 2011, PA Mae Caragay and Anne Marie Gonzalez, M.D., provided a treating assessment of Plaintiff's residual functioning indicating that Plaitniff could lift and carry up to ten pounds occasionally; and that she could sit, stand, and walk for a total of three hours in an eight-hour workday. AR 383-384. Additionally, Plaintiff was limited to sitting for thirty minutes at a time; standing for ten minutes at a time; walking for fifteen minutes at a time; and required the use of a cane. AR 384. The medical providers further opined that Plaintiff could never reach overhead with her right arm; could frequently reach in all other directions; and could occasionally handle, finger, feel, push, and pull with the right hand. AR 385. The assessment also included occasional environmental limitations. AR 387. The ALJ rejected this assessment because limitations were not consistent with Plaintiff's treatment or the medical records. AR 409.

Treatment notes do not resume again until March 2012 when Ms. Fraser presented with tenderness to palpation in the bilateral trapezius region and the generalized costal area. The upper and lower extremities were unremarkable. AR 879-880.

On June 19, 2012, PA Caragay completed a General Relief Form. AR 843. Ms. Caragay

opined that Ms. Fraser could only perform limited part-time work due to her history of CVA, right-sided weakness, and decreased strength and mobility. Plaintiff was limited to light work only (lifting less than twenty pounds at one-time); no repetitive bending or lifting, no repetitive hand movements (use of keyboard less than ten minutes/hour); and standing/walking (less than fifteen minutes in a hour). AR 406; 843.

In February 2013, Plaintiff presented to PA Caragay requesting completion of a discharge application for loan repayment and permanent disability form. AR 811. She complained of increased tremors and referred for a neurological examination. AR 811. In subsequent visits, there is no report of any complaint of tremors and no neurological evaluation was completed. AR 406; 814; 819-820; 825-840.

On February 26, 2013, Dr. Tomas Rios, M.D., conducted an internal medicine consultative evaluation. AR 804-808. Dr. Rios observed occasional tremor of Plaintiff's right arm and slight motor weakness in the right upper and lower extremities at 4+/5. AR 807. Plaintiff's grip strength was slightly diminished in the right arm. Dr. Rios noted that Plaintiff had a slight deficit from her stroke on her right side, however, her balance and equilibrium remained preserved. AR 807. With regard to Plaintiff's back pian, he noted that there was "only tenederness to palpation along the lumbar spine." AR 807. Given the above, Dr. Rios opined that Plaintiff could lift up to fifty pounds occasionally and twenty-five pounds frequently. AR 807-808. She could stand and walk for six hours and had no sitting limitations. He also opined that Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl. AR 808. He found no manipulative or environmental limitations. AR 808. The ALJ gave this opinion great weight because Dr. Rios did a thorough examination of the Plaintiff, took all her subjective complaints into account, and is board certified in internal medicine. AR 403.

On March 12, 2013, state agency, non-examining physician, Dr. K. Quint, M.D. reviewed the file and opined that Plaintiff retained the ability to occasionally lift one hundred pounds or more; could frequently lift up to fifty pounds; and stand, walk, and sit, for about six hours in an eight-hour day. AR 534. Posturally, Dr. Quint opined Plaintiff could occasionally climb ramps/stairs and balance, and never climb ladders ropes or scaffolds. AR 534. State agency non-

examining physician Dr. D. Pong, M.D., reviewed the file on December 24, 2013, and agreed with Dr. Quint"s opinion. AR 520-522. The ALJ gave these opinons limited weight. AR 404.

On December 10, 2013, Dr. Fariba Vesali, M.D. conducted a consultative neurological evaluation. AR 864-867. Motor strength and grip strength were normal. AR 866. Plaintiff did not have difficulty getting on or off the exam table. AR 865. Plaintiff experienced off-and-on hand shakes, but she was able to pick up a paperclip off of the table. AR 865. Plaintiff was using a cane, however, she was able to walk without an assistive device. AR 865. Dr. Vesali opined that Plaintiff suffered from right shoulder tendonitis and lumbar strain. However, he found that Plaintiff could walk, stand, and sit for six hours in an eight-hour workday. He also determined that Plaintiff could lift/carry fifty pounds occasionally and twenty-five pounds frequently. She could perform frequent postural activities. She could frequently reach and handle with the right hand. AR 867. The ALJ gave this opinion great weight because Dr. Vesali did a thorough examination of the Plaintiff, took all her subjective acomplaints into account, and is board certified in physical medicine and rehabilitation. AR 404.

In January 2014, Plaintiff was involved in a motor vehicle accident when she was rear ended by another vehicle while she was stopped at a red light. AR 407; 916-926; 961-974. She was diagnosed with strain, contusion, and sprain. AR 919. X-ray of the thoracic spine dated January 7, 2014 showed levoconvex scoliosis of the degenerative thoracic spine and no evidence of acute fracture or dislocation. AR 924. X-ray of the lumbar spine revealed mild dextroconvex curvature of the lumbar spine, and disc space narrowing at L5-S1, but no acute fracture or dislocation. AR 925. X-ray of the cervical spine revealed degenerative disc disease at C4-C5 and C5-C6, but no evidence of acute fracture or dislocation, and the prevertebral soft tissue and epiglottis were unremarkable. AR 925.

Plainitff had chiropractic adjustments from January to March 2014 that resulted in a ninety percent improvement in her accident related symptoms. AR 407; 978-983. Physician Assistant ("PA") Stephen Williams examined Plaintiff in February and March 2014 (AR 961-976), and diagnosed her with whiplash, cervical spine strain, right shoulder pain, lumbar spine strain/sprain, and right knee pain and swelling. AR 965; 974. He found impaired mobility in

Plaintiff's spine, as well as limited range of motion on her right side. AR 966. He recommended a lumbar spine brace for lumbar support, physical therapy, x-rays of the right shoulder and knee, and psychiatric consultation for assistance in coping with the accident. AR 966.

On April 24, 2014, Dr. Samuel B. Rush, M.D. conducted a complete internal medicine consultative examination. AR 906-915. Grip strength was seventy, sixty, sixty-five pounds in the right hand and forty, forty-five, and forty in the left. AR 907. Range of motion was normal in the cervical and lumbar spine and in the shoulder joints. AR 908. Motor strength was 2/5 in the lower right extremity and 4/5 in the left lower extremity. Dr. Rush observed a moderate limp favoring the right lower extremity due to weakness and noted use of a cane. AR 909.

Dr. Rush opined that Plaintiff retained the ability to lift and carry twenty pounds frequently and ten pounds continuously; she could stand for four hours, walk for two hours, and sit for eight hours at one time and in an eight-hour workday. AR 911-912. She required a cane to ambulate, but was able to use her free hand to carry small objects. AR 912. Plaintiff could reach overhead, push/pull occasionally, and feel, finger, handle, and reach in all other directions frequently with the right hand, with no limitations to the left. AR 913. Ms. Fraser was able to operate foot controls occasionally with the right foot and was able to stoop and climb ramps and stairs occasionally, however, she could never balance, kneel, crouch, crawl, or climb ladders or scaffolds. AR 914. The ALJ rejected this opinion because it was inconsistent with the treatment records and with other physician's opinons in the record. AR 408.

Dr. Bryan Cruz, M.D. completed a "Physical Residual Function Capacity Medical Source Statement." AR 985-988. He opined that Plaintiff could lift and carry five pounds occasionally and less than five pounds frequently. AR 408; 985  She is able to sit, stand, and walk for one hour at a time up to four out of eight hours; and should elevate her legs for thirty minutes after one hour of sitting. AR 986-987. She must use an assistive device for all surfaces. AR 987. She was able to grasp, turn, and twist objects twenty-five percent of the time, perform fine manipulation fifty percent of the time, and reach twenty-five percent of the time. AR 987. She could climb stairs and ramps, but no ladders, ropes, or scaffolds. AR 987. She would be off task twenty-five percent of the time, absent from work four days per month, and unable to complete an

eight-hour day four times per month. AR 988. The ALJ rejected this opinion because there is no evidence that the doctor ever examined Plaintiff, and his opinion that she suffered from bilateral mamipulative limitations was not supported by the record. AR 408.

### III.  THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1502(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.920(a)(4) and 404.1502(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 416.1529, 416.927, and 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his or her past relevant work,[4] and (5) whether the claimant had the ability to perform

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545, 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an

8

other jobs existing in significant numbers at the regional and national level.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

### A.     The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 398-411.  Specifically, the ALJ found that Plaintiff met the insured status requirements through September 30, 2015. AR 400.  The ALJ further found that Plaintiff had not engaged in substantial gainful activity since February 9, 2009, the alleged onset date in the appliations. AR 400.  The ALJ identified obesity, history of cerebral ascular accident, hypertenston, lumbar degernative joint disease, thoracolumbar scoliosis, and right shoulder tendonitis as severe impairments. AR 400-402. Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 402.

Based on the review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work. AR 402.  Specifcially, the ALJ found that Plaintiff was limited to lifting and carrying fifty pounds occasionally and twenty-five pounds frequently; and that she could stand, walk, and/or sit for six to eight hours in an eight-hour work day. AR 402.  The ALJ further determined that Plaintiff was able to occasionally balance and climb ramps and stairs, but is unable to climb ladders, ropes, and scaffolds.  AR 402.  Based on this RFC, the ALJ determined that Plaintiff could perform her past relevant work as a nurse assistant and home attendant.  AR 410.

### IV.    STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

---

intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

**V.      DISCUSSION**

      **A.      The ALJ Improperly Weighed the Medical Evidence.**

Plaintiff argues that the ALJ improperly evalulated the physicians' opinions by failing to consider the limitations outlined in Dr. Rush's report. Specifically, she contends that the ALJ's reliance on Dr. Rios and Vesalis' opinions in lieu of Dr. Rush's findings was improper because Plaintiff was in a car accident in January 2014, after Drs. Rios and Vesalis completed their evaluations. As a result of this accident, Plaintiff suffered additional back injuries that these doctors did not consider as part of their evaluations. Plaintiff asserts that when rejecting Dr. Rush's opinion, the ALJ relied on her own interpretation of post-accident medical records rather than on a medical opinion which is improper. (Docs.12, pgs. 3-16; Doc. 14, pgs. 3-5). Because Dr. Rush's opinion includes an evaluation of her post-accident injuries and results in a findng of disablity, the case should be remamded for an award of benefits or alternatively, for further consideration of the medical record.

The Defendant argues that that ALJ properly considered the entire medical record and gave specific and legitimate reasons for rejecting Dr. Rush's opinion including relying on other doctor's opinions and the medical record. Additionally, the ALJ found that Plaintiff's symptoms were not credible because her symptomatology varied from setting to setting and increased when she was requesting disability. Therefore, the ALJ's evlaution of the medical record is supported by substantial evidence. (Doc. 13, pgs. 7-11).

*1. The Law*

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F. 3d 1273, 1285 (9th Cir. 1996).

However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. Similarly, the opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians, and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, *citing Magallanes v. Bowen*, 881 F.2d 751–755 (9th Cir. 1989).

*2. Analysis*

Here, the ALJ gaver greater weight to Dr. Rios and Vesalis' reports and rejected Dr. Rush's opinion. In doing so, the ALJ gave a detailed summary of all the medical records and physician's opinions. AR 402-410. When reviewing Dr. Rush's opinion, the ALJ stated as follows:

> I give little weight to Dr. Rush's opinion because it is inconsistent with the treatment records and with the findings of other examining specialists. Dr. Rios examined the claimant in February 2013 and found that she had a normal gait and 4+/5 right arm and leg strength and right hand grip. Dr. Vesali examined the claimant in December 2013 and found the claimant had normal gait and full motor strength of 5/5 in the upper and lower extremities and hand grip. There is no mention in the treatment record of any event that would have caused such a drastic decline in strength just five months later, especially considering the stoke occurred more than four years earlier, and strength is a highly subjective area.

11

AR 408.  Because Dr. Rush's opinion was contradicted by another doctor, the ALJ was required to give specific and legitimate reasons for rejecting the opinion.  The ALJ did not do so in this case.  The Court recognizes that "the ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d at 750.  As a result, an ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion "alone constitutes substantial evidence" to reject treating physician's opinion where it "rests on his own independent examination").

In this case, the ALJ rejected Dr. Rush's findings on the basis there is no mention of any event in the medical record that would have caused a drastic decline in strength just five months after Dr. Rios and Dr. Vesali's opinions. AR 408.  Although reliance on an examining physician's opinion can constitute substantial evidence, here, the ALJ's reasoning is not legitimate because she does not adequately address the injuries Plaintiff she suffered in the January 2014 car accident.  Although the ALJ discusses the the accident earlier in the opinion, her recitation of the medical evidence was not comprehensive. When discussing the accident, the ALJ states as follows :

> The Claimant went to the emergency room after a motor vehicle accident in January 2014.  She complained of neck, back, and head pain. X-rays showed levoconvex scoliosis of the degernative thoracic spine, but no acute fracture or dislocation at any level of the spine.  The doctor diagnosed back strain and prescribed Viocodin.  The Claimant had  chirpopractic adjustments from January to March 2014 that resulted in 90% improvement in her accident related symptoms.  The claimant saw Stephen Willimas, PA-C in February and March 2014 for accident-related pain and referral from her chiropractor.  He diagnosed the claimaint with wiplash; cervical spine/sprain; right shoulder pain; lumbar spine/sprain; and right knee pain and swelling.  Mr. Williams prescribed Omeprzaole, Vicodin, Norco, Cartivisc, Gabapentin, Ibuprofen, Napro Cream, and Tramadol.  Again, neither of these providers mentioned tremor or right-sided weakness.

 AR 407.  Although the ALJ correctly notes that on March 14, 2014, the chiropracter noted a ninety percent improvement in Plaintiff's condition (AR 979), there is no mention of the fact that three days prior, PA Williams evaluated Plaintiff and found impaired mobility in her spine, as

well as limited range of motion on her right side. AR 966. Mr. Williams recommended continuing physical therapy, a back brace, and additional x-rays of Plaintiff's knee and shoulder. AR 966. The ALJ does not reference those findings in the decision, but instead makes a general reference to Mr. William's diagnosis to support her finding that no signicant event occurred after Drs. Rios and Versalis' opinions. By relying on the post-accident treatment records in this manner, the ALJ relied on her own independent medical assessment of the diagnostic data contained in Mr. William's evaluation. No other physician had performed a functional assessment of Plaintiff's capabilities after the accident except for Dr. Rush and Dr. Cruz, and the ALJ rejected both of those those opinions. An ALJ is not permitted to substitute her own interpretation of the medical evidence for the opinion of the medical professionals. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). Thus, the basis to reject Dr. Rush's opinion is not a legitimate one, and the ALJ's decision in this regard is not based on substantial evidence.

### B. The Case Shall Be Remanded For Further Proceedings

Given the above error, Plaintiff argues that the case should be remanded for benefits because theVE testified that if limitations outlined in Dr Rush's opinion are adopted, Plaintiff is disabled. However, the court has the discretion to remand for further proceedings or reverse and award benefits b ased on the "credit-as-true" rule. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*. at 1021. *See also*, *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ

13

makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

In this instance, after reviewing the record, the Court has some doubts that the Plaintiff is disabled. As the Commissioner has argued, the ALJ found Plaintiff was not credible. The ALJ also correctly noted that there is a lack of additional treatment records after PA William's examination indicating that Plaintiff pursued additional treatmemt or diagnoistic tests to treat her condition. AR 406. Further, the record supports the ALJ's finding that Plaintiff's symptomatology has been inconsistent, varies from setting to setting, and increases when she is requesting disability forms. AR 318; 409; 819-820; 825-840; 843; 903.

Notwithstanding the above, the Court is unable sustain the ALJ's RFC finding that Plaintiff is able to lift and carry fifty pounds occasionally and twenty-five pounds frequently, or perform her past work as a nurse assistant or home attendant given the lack of a physician's medical evaluation supporting that finding.[5] As such, further administrative proceedings would serve a useful purpose. On remand, the ALJ shall further develop the record, including having a doctor review Plaintiff's post-accident condition, and devise an RFC that is supported by medical opinions. Once this a new RFC is devised, the ALJ shall obtain the testimony of a VE (if needed) and determine what jobs, if any, Plaintiff is able to perform.

///
///
///
///
///
///
///
///

---

[5] The Court is not persuaded by the Commissioner's argument that Dr. Rush's opinion is not inconsistent with her ability to perform light work and therefore, she could perform her past job as a home attendant. (Doc. 13, pg. 8). Dr. Rush opined that Plaintiff could only occasionally climb stairs and ramps, stoop, reach overhead, and push/pull. AR 913-914. The vocational expert indicated that a person with these limitations would not be able to perform Plaintiff's past work as a home attendant or a nurse assistant. AR 439.

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole. Accordingly, this Court ORDERS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED IN PART. The Court further ORDERS this case be remanded for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff, Grace Jane Fraser, and against Defendant Carolyn W. Colvin, Commissioner of Social Security, and close this case.

IT IS SO ORDERED.

Dated:   **November 14, 2016**                     **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE